Maxel B. SILVERBERG, Appellant,

v.

Marjorie Wolens MILKES, et al., Independent Executors of the Estate of Louis Wolens, Deceased, et al., Appellees.

No. 10–82–153–CV.

Court of Appeals of Texas, Waco.

Aug. 11, 1983.

Rehearing Denied Sept. 8, 1983.

Harold B. Berman, Paul A. Hoffman, Berman, Fichtner & Mitchell, Dallas, for appellant.

---

Matt R. Dawson, Word G. Bizzell, Dawson, Dawson, Sodd, Davis, Moe & Bizzell, Corsicana, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Silverberg from judgment of the trial court refusing to admit to probate an unproduced purported third codicil to the will of Louis Wolens, deceased; and decreeing plaintiff taking nothing by his suit.

Plaintiff sued the executors of the estate of Louis Wolens, deceased (and the Kolman and Ida Wolens Foundation) seeking to probate a third codicil to the will of Louis Wolens, deceased, which codicil plaintiff "cannot produce to this court"; or in the alternative to impose a constructive trust upon the assets of the estate of Louis Wolens, alleging the decedent had requested plaintiff and others to prepare a third codicil to his will setting aside a million dollars of his estate in a trust for religious and charitable purposes with plaintiff as trustee; that after several revisions of such codicil were made plaintiff travelled from Dallas to Corsicana to get the codicil executed; that decedent was confined in a hospital in Corsicana; that plaintiff arrived at the hospital to get the codicil executed but left due to treatment being given decedent with intent to return later in the day to secure execution of the codicil; that subsequently that day he was advised by Julius Jacobs, the attorney representing Wolens, that Dean Milkes (husband of Wolens' niece) had told Jacobs to tell plaintiff the decedent had already executed the codicil after same had been mailed to Corsicana for that purpose; that the executed codicil was in the possession of Milkes; that after the death of decedent plaintiff learned that the codicil was not probated; that plaintiff relied on the representation of Jacobs and/or Milkes that the codicil was executed and did not undertake to secure the execution of codicil himself; that by reason of the misrepresentation, fraud, and reliance thereon he has been damaged by the loss of benefits conferred by the codicil and prays for a constructive trust to be placed on the assets the codicil would have affected for the purposes set forth in the unexecuted codicil.

Trial was to a jury findings of which are summarized as follows: (1) the third codicil document was not signed by Louis Wolens (or any witnesses); (2) Dean Milkes told Julius Jacobs to tell Bud Silverberg the codicil had been signed by Louis Wolens; (3) Julius Jacobs did not tell Bud Silverberg the codicil had been signed by Louis Wolens, was in the possession of Milkes, and that there was no reason for Silverberg to be concerned further; (4) Bud Silverberg did *not* rely on what he was told by Julius Jacobs, and for that reason did not go to the hospital to get Louis Wolens to sign the codicil; (5) Louis Wolens was not of sound mind on the day Bud Silverberg went to the hospital for Louis Wolens to sign the codicil; (6) the statement of Dean Milkes to Julius Jacobs that the codicil had been signed by Louis Wolens was not true.

The trial court rendered judgment on such verdict denying probate to the third codicil; and further decreed plaintiff take nothing.

Plaintiff appeals on 5 points.

Points 1, 4 and 5 assert the trial court erred in refusing to permit Silverberg to testify as to conversations and transactions with the decedent, Louis Wolens (and to admit portions of certain exhibits) because defendants had waived the prohibition of Article 3716 (The Dead Man's Statute).

Points 2 and 3 assert the jury's answers to Issues 4 and 5 are contrary to the undisputed evidence and against the great weight and preponderance of the evidence.

Louis Wolens had no children. He had a sister, Daisy Wolens Silverberg, and a brother, Joe Wolens, deceased, among other relatives. Joe Wolens was the father of Marjorie Milkes and Bette Miller who are co-executors of Mr. Wolens' estate along with Wesley Ashendorf. Daisy Wolens Silverberg is the wife of Jay Silverberg and mother of plaintiff Maxel (Bud) Silverberg. Many years ago Louis Wolens had a major rift with his sister Daisy and her husband,

which resulted in almost no communication between them although they all lived in Corsicana. Louis Wolens was about 81 years of age in 1978. He was in poor health. He was a sentimental man and desired a reconciliation with his sister and her family. He had a will plus 2 codicils which left his 5 million dollar estate largely to religious and charitable purposes after making bequests to nieces, nephews and others. In October 1978, he had his attorney, Honorable Julius Jacobs, draft a [3rd] codicil to his will in which he left a million dollars to a religious and charitable trust, and named plaintiff Maxel (Bud) Silverberg as trustee with provisions for generous compensation, and the power to name successor trustees in his family for a great number of years. Attorney Jacobs sent a copy to plaintiff for suggestions. Various lawyers, tax experts and CPA's were consulted during the next 12 months and many drafts of the codicil were prepared. Mr. Wolens hoped by setting up the [3rd codicil] trust that he could effectuate a reconciliation with his sister, but told attorney Jacobs it looked like it wasn't going to work, and he never decided to execute the trust—he changed his mind a half dozen times. Mr. Wolens always found something wrong with many drafts of the codicil.

On October 20, 1979, Mr. Wolens was placed in the intensive care unit at the Corsicana hospital. On October 25, 1979, plaintiff came to Corsicana to take the codicil to Mr. Wolens and secure its execution. Plaintiff and attorney Jacobs went to the hospital with the codicil, but did not get it signed. Plaintiff returned to the hospital that afternoon to try to get the codicil signed but Mr. Wolens was asleep and he did not get it signed. Plaintiff returned to Attorney Jacobs' office. Plaintiff testified Attorney Jacobs told him that Dean Milkes (husband of Mr. Wolens' niece) told him that Mr. Wolens had already signed the codicil. Attorney Jacobs testified he told plaintiff that Milkes "has a codicil to the will" but not that it had been signed. Milkes testified he told Jacobs "that he thought" the codicil was in Wolens' desk.

Mr. Wolens died on May 18, 1980, at 83 years of age. His will with 2 codicils was admitted to probate. The [third] codicil was denied probate.

The jury found in answer to Issue 6 that Louis Wolens was not of sound mind on the day that plaintiff went to the hospital for Mr. Wolens to sign the codicil. This was on October 25, 1979. It is our view that judgment of the trial court must be affirmed without reference to the correctness of the trial court's rulings on evidence. Rule 454, T.R.C.P.

■ First it is undisputed in this record that Mr. Wolens never signed the [third] codicil. Thus all plaintiff's points must of necessity be directed at the trial court's take nothing judgment on the basis that no trust was in fact established by the plaintiff.

■ Issue 4 found that Julius Jacobs did not tell Bud Silverberg the codicil had been signed by Mr. Wolens, was in possession of Milkes, and there was no reason for Silverberg to be concerned further. We hold the evidence sufficient to support this finding. The jury was entitled to believe Attorney Jacobs.

Moreover, had the jury answered Issue 4 otherwise and Issue 5 otherwise, such would not constitute finding that Louis Wolens was prevented from executing the codicil he intended to execute and would have executed but for the alleged misrepresentation.

Plaintiff has in no way shown and has no finding to the effect that his going to the hospital again would have resulted in the execution of the codicil.

Finally it is overwhelming that on October 25, 1979, Mr. Wolens did not possess testamentary capacity at the time he was assertedly prevented from signing the [3rd] codicil. *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559 (1948).

As noted Mr. Wolens was 82 years of age; in the hospital; Attorney Jacobs testified Mr. Wolens was not physically or mentally capable of signing any papers; Dr. Rogers testified Mr. Wolens had chronic heart failure which required emergency manage-

ment; that he developed asterexis, a nervous condition that develops in the presence of poor functioning of the brain; that Mr. Wolens would not have known he was signing will; would not have known the effect of a will if he had signed it; would not have known the nature and extent of his property; and whether someone was in the will was too high level a thinking process for his brain to handle; medical records describe Mr. Wolens' condition as "his mental status as somolent and confused"; Dean Milkes testified he saw Mr. Wolens every day during his last 2 years; that Mr. Wolens was not able to know and comprehend business or property; Dr. Bone testified Mr. Wolens was in a state of progressive deterioration in the summer of 1979; that he suffered a series of strokes in August 1979; that he was confused; that from the middle of October on he was not of sound mind; that he had a condition known as "organic brain syndrome" which means the brain is deprived of an adequate blood supply and oxygen and he could not think clearly; that he did not have testamentary capacity; Mrs. Wilson, a nurse with Mr. Wolens testified that on October 24 and October 25 he was not of sound mind and not capable of thinking straight then and until he died.

Plaintiff asserts he was prevented from testifying as to Mr. Wolens' bright mind on October 25, 1979, by the trial court sustaining of the Dead Man's Statute objection. A careful reading of plaintiff's testimony on bill of exception fails to substantiate plaintiff's assertion, and would in any event amount to only a scintilla of evidence to prove testamentary capacity or that Mr. Wolens was of sound mind on October 25, 1979.

We further note that in our view defendants did not waive the prohibitions of the Dead Man's Statute.

All plaintiff's points are overruled.

AFFIRMED.